**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **PEGGY S. C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-CV-387-JED-JFJ** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Peggy S. C. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician;

the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See id.*  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*  A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

Plaintiff, then a 49-year-old female, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on March 8, 2016, alleging a disability onset date of January 1, 2014.  R. 12, 210-219.  Plaintiff claimed she was unable to work due to conditions including bulging disc, panic attacks, high blood pressure, and depression.  *See* R. 237.  Plaintiff's claims for benefits were denied initially on June 9, 2016, and on reconsideration on October 26, 2016.  R. 68-132.  Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on February 27, 2018.  R. 39-67.  The ALJ issued a decision on March 27, 2018, denying benefits and finding Plaintiff not disabled because she was able to perform other work existing in the national economy.  R. 12-22.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2015.  R. 14.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged

onset date of January 1, 2014. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: early anterior osteophytes at L2 through L5; and major depressive disorder, recurrent severe, with anxious distress, and with panic attacks. *Id.* He found that Plaintiff's impairments of hypertension and high cholesterol were not severe. R. 15. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 15-16. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in the two areas of (1) interacting with others and (2) concentrating, persisting, or maintaining pace; and mild limitations in the two areas of (1) understanding, remembering, or applying information and (2) adapting or managing oneself. R. 16.

After evaluating the objective and opinion evidence, and Plaintiff's statements, the ALJ concluded that Plaintiff has the RFC to perform a range of light work as follows:

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally balance, kneel, stoop, crouch, and crawl. The claimant can understand, remember, and carry out simple repetitive tasks. Public contact should not be a part of the job duties. The claimant can tolerate superficial contact with coworkers and supervisors.

R. 16-17. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 20-21. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled light work, such as Small Product Assembler, Inspector/Packer, or Poultry Processor. R. 21-22. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 22. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

### III.    Issues

Plaintiff raises two points of error in her challenge to the denial of benefits: (1) the ALJ failed to discuss Plaintiff's obesity and fatigue at step two of the sequential evaluation process, leading to subsequent failures at the remaining steps; and (2) the ALJ's step-five findings are flawed.  ECF No. 15.

### IV.    Analysis

#### A.    ALJ's Step-Two Analysis and Consideration of Fatigue and Obesity Were Adequate

Plaintiff argues that, at step two of the analysis, the ALJ failed to adequately consider her impairments of fatigue and obesity as severe impairments.  ECF No. 15 at 3-7.  In support, Plaintiff points to various complaints and diagnoses of fatigue.  R. 353, 355, 369, 390, 422, 484, 486, 496, 498, 502, 503.[1]   She further points to various observations indicating an obese body-mass index ("BMI").  *See* R. 392 (BMI of 49.42 in February 2013), R. 382 (BMI of 48.89 in May 2013), R. 375 (BMI of 50.08 in February 2014), R. 366 (BMI of 48.74 in June 2014), R. 361-363 (BMI of 47.85 and assessment of morbid obesity in November 2014), R. 342 (diagnosis of morbid obesity in March 2016).  Plaintiff contends the ALJ should have expressly considered these findings and found fatigue and obesity to be severe impairments, although she does not point to any particular functional limitations resulting from either impairment.

Regarding Plaintiff's allegations of fatigue, Plaintiff's argument fails.  First, as the Commissioner explains, fatigue is a symptom and is not itself a medically determinable impairment for step-two purposes.  *See* Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *2 (explaining that "[n]o symptom or combination of symptoms by itself can constitute a

---

[1] Strangely, many of the record citations Plaintiff identifies as supporting her complaints of fatigue either do not mention fatigue or indicate she did *not* complain of fatigue.  *See* R. 348, 374, 398, 402, 406, 478.

medically determinable impairment"); SSR 16-3p, 2017 WL 5180304, at *3 (listing fatigue as a symptom). Second, the ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 19. Plaintiff does not challenge this conclusion, and the undersigned will not re-examine it here.[2]

Regarding obesity, Plaintiff's argument is also unpersuasive. An ALJ must consider the effects of obesity as part of the RFC determination. *See* Social Security Ruling ("SSR") 02-01p, 2000 WL 628049.[3] Obesity can affect "exertional, postural, and social functions," and "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Accordingly, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record." *Id.* The obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions." *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. Oct. 21, 2016).

Here, the ALJ noted in the RFC discussion that the initial state agency medical reviewer, Larry Ressler, M.D., opined Plaintiff should be limited to light work, considering her obesity and back pain. R. 19 (citing R. 70-101). Specifically, Dr. Ressler opined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and stand/walk/sit for six hours

---

[2] To the extent Plaintiff attempts to challenge the ALJ's consistency findings for the first time in the reply brief (*see* ECF No. 21 at 2-3), the argument is waived. *See Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co.*, 777 F.3d 1132, 1142 (10th Cir. 2015) (citing *M.D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n. 7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

[3] SSR 02-01p was rescinded effective May 20, 2019. However, a reviewing court should apply SSR 02-01p if it remained in effect at the time of the ALJ's decision, as was the case here. *See* SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019).

in an eight-hour workday.  R. 79-80, 95-96.  Dr. Ressler indicated that the "[medical evidence of record], pain, obesity, [treatment], [prescriptions], and [activities of daily living] [were] considered in limiting this RFC and [did] not further limit" Plaintiff.  R. 81, 97.  The ALJ gave his opinion moderate weight, concluding that Plaintiff was more limited than Dr. Ressler had opined.  *See* R. 16-17, 19.  Although Plaintiff contends the ALJ should have discussed her obesity more thoroughly, Plaintiff cites to no records in which a medical provider attributed any additional mental or physical functional limitations due to obesity.  By contrast, the record indicates findings of normal gait (362, 457, 531), and normal strength (R. 419, 403, 445).  At the hearing, Plaintiff did not testify that her obesity limited her functioning in any way.  *See* R. 44-60 (hearing testimony).

The diagnosis of obesity does not necessarily translate into functional limitations.  *See Johnson v. Comm'r, SSA*, 764 F. App'x 754, 758 (10th Cir. 2019) (noting that SSR 02-01p "does not mandate any additional restrictions or a finding of disability" based on a claimant's obesity).  Plaintiff points to no conflict or lack of development in the record regarding obesity.  She also has not pointed to any medical evidence indicating her obesity resulted in functional limitations greater than those stated in the RFC.  *See Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (finding no error in obesity evaluation where ALJ found obesity severe and included specific postural limitations consistent with record but did not specifically mention obesity in RFC determination); *Fluaitt v. Comm'r of Soc. Sec. Admin.*, No. CIV-18-070-KEW, 2019 WL 4803226, at *4 (E.D. Okla. Sept. 30, 2019) (finding obesity discussion sufficient, where state agency physicians considered claimant's obesity in concluding claimant could perform medium work, and ALJ found those opinions were consistent with the record as a whole and agreed with their conclusion that claimant could perform medium work).

Moreover, given the fact that the ALJ found Plaintiff to have severe impairments, accounted for Plaintiff's obesity, and addressed her complaints regarding her symptoms, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

**B.    ALJ's Step Five Analysis Was Proper**

**1.    ALJ's Step-Four Findings Were Consistent with Step-Five Findings**

Plaintiff argues the ALJ's findings at step four were inconsistent with his step-five findings. Specifically, she argues that, because the VE and the ALJ found Plaintiff was unable to perform her past medium/light composite job, the ALJ was not entitled to rely on the VE's testimony that Plaintiff could perform other light exertion jobs existing in the national economy.

Regarding past relevant work, the VE testified that Plaintiff "did several things at the restaurant" where she previously worked, so she would just "list all of the things" that she did there.  R. 61.  The ALJ then asked if her previous work was a composite job, and the VE replied that "it sounds like that."  *Id.*  The VE then listed four jobs – Restaurant Cook (medium exertion), Cashier (light exertion), Waitress (light exertion), and Steam Table Attendant (light exertion).  R. 62.  The ALJ then provided a hypothetical RFC to the VE that matched the final RFC, and the VE indicated that Plaintiff's past work would be eliminated given those limitations.  *Id.*  The VE provided three other light jobs in the national economy that Plaintiff could perform given those limitations – Small Product Assembler, Inspector/Packer, and Poultry Processor.  R. 62-63.  In the decision, the ALJ did not indicate that Plaintiff's past relevant work was a composite job, instead

listing out the four components of the past work separately.  R. 20.  The ALJ then referred to the VE's testimony that Plaintiff would be unable to perform any of her past work "because the work is too heavy."  *Id.*[4]

Although the ALJ did not identify the past work as a composite job in the decision, the VE's testimony makes it clear that the ALJ found Plaintiff had one composite job with significant elements of the four identified jobs, rather than four separate jobs.  A composite job "is a job that has 'significant elements of two or more occupations and, as such, ha[s] no counterpart' in the [DOT]."  *Wilson v. Berryhill*, 269 F. Supp. 3d 1164, 1169 (N.D. Okla. 2017) (quoting SSR 82-61, 1982 WL 31387, at *2).  If a claimant is able to perform her past relevant work at a composite job, she must be able to perform the requirements of all of the component jobs.  *See* SSA Program Operations Manual System ("POMS") DI 25005.020(B) ("When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.").  Here, one of the component jobs Plaintiff performed was Restaurant Cook, which is a medium-exertion job.  Given Plaintiff's RFC limiting her to light work, the ALJ appropriately adopted the VE's testimony that she would be unable to perform her past relevant work.  No inconsistency exists between the ALJ's finding at step four that she was unable to perform a composite job with medium-exertion components, and his finding at step five that Plaintiff could perform light-exertion jobs.

### 2.    Plaintiff's RFC Is Compatible with Jobs Requiring Level-Two Reasoning

The ALJ found that Plaintiff had the RFC to "understand, remember, and carry out simple

---

[4] The ALJ stated in the decision that the VE testified Plaintiff's past relevant work was "too heavy." R. 20.  However, the VE did not testify as to the reason Plaintiff was unable to perform her past work, only that she would be unable to perform it given her RFC limitations.  R. 62.  Plaintiff does not take issue with this aspect of the ALJ's statement, and the undersigned will not further address it.

repetitive tasks." R. 16-17.  Plaintiff argues these mental limitations are incompatible with two of

the three jobs identified by the VE, because the DOT assigns them a reasoning level of two.  *See*

DOT 706.684-022 (Small Product Assembler), 559.687-074 (Inspector/Packer).

The reasoning level component is a classification under the General Educational

Development ("GED") scale.  DOT App'x C, § III.  The GED scale is composed of three divisions:

Reasoning Development, Mathematical Development, and Language Development.  *Id.*  The

"Reasoning Development" division of the GED scale is divided into six levels.  A job with a

reasoning level of two requires the worker to "[a]pply commonsense understanding to carry out

detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few

concrete variables in or from standardized situations."  *Id.*

Plaintiff argues that she "clearly does not have the RFC to perform these occupations,"

without citation to any supporting authority.  Plaintiff's argument is not persuasive.  The Tenth

Circuit has stated that an RFC limitation to simple and routine work tasks appears consistent with

level-two reasoning.  *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).  *See also Stokes

v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (rejecting argument that limitation to simple,

repetitive, and routine work should be construed as a limitation to level-one reasoning jobs, citing

*Hackett*); *Rainwater v. Colvin*, No. 15-CV-491-GKF-FHM, 2016 WL 11468941, at *2 (N.D. Okla.

Sept. 21, 2016) (noting that, although the DOT "employ[s] the word 'detailed,' reasoning level 2

jobs are not inconsistent with" a limitation of being able to understand, remember, and carry out

simple instructions), *report and recommendation adopted*, 2016 WL 6561298 (N.D. Okla. Nov.

4, 2016); *Ray v. Comm'r of Soc. Sec.*, No. CIV-18-00638-SM, 2019 WL 1474007, at *5 (W.D.

Okla. Apr. 3, 2019) (collecting cases finding GED reasoning level two is consistent with simple

tasks).  Plaintiff does not persuasively explain how her RFC is inconsistent with a GED reasoning

level of two, particularly in light of the Tenth Circuit's findings in *Hackett* and *Stokes*. Accordingly, no conflict exists between Plaintiff's RFC limitation to "understand[ing], remember[ing], and carry[ing] out simple repetitive tasks" and the level-two reasoning required by the Small Product Assembler and Inspector/Packer jobs.

Because the undersigned identifies no error in the ALJ's determination regarding the three light-exertion jobs, it is unnecessary to consider Plaintiff's additional argument that she is unable to perform alternative sedentary jobs the VE identified at the hearing. *See* ECF No. 15 at 9-10.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by October 7, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*,

950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for

*de novo* review by the district court or for appellate review.

**SUBMITTED** this 23rd day of September, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**