IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PEGGY S. C., ) | |
| ) | |
| Plaintiff, ) | Case No. 19-CV-0387-CVE-JFJ |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is the report and recommendation (R&R) (Dkt. # 22) of United States Magistrate Judge Jodi F. Jayne on review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying the plaintiff disability benefits. The magistrate judge recommends that the Court affirm the Commissioner's denial of plaintiff's application for benefits. Plaintiff filed a timely objection (Dkt. # 23) to the R&R, and she requests that the Court reject the R&R and remand for further administrative proceedings. The Commissioner filed a response to the objection (Dkt. # 24), arguing that the R&R should be accepted. Reviewing the objection de novo, the Court has considered the administrative record (Dkt. # 10), the parties' briefs, the R&R, and plaintiff's objection, and concludes that the R&R should be accepted, and the Commissioner's determination should be affirmed.

---

[1] Effective July 11, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

I.

Plaintiff was 49-years old when she applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on March 8, 2016, alleging disability as of January 1, 2014, due to a bulging disc, panic attacks, high blood pressure, and depression. Dkt. # 10, at 12, 237. The Commissioner denied plaintiff's application for benefits on June 9, 2016, and on reconsideration on October 26, 2016. Id. at 68-132. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), who conducted the hearing on February 27, 2018. Id. at 39-67. The ALJ issued a decision on March 27, 2018, denying benefits and finding plaintiff not disabled because she could perform other work existing in the national economy. Id. at 12-22. The Appeals Council denied review, and plaintiff appealed. Id. at 1-3; Dkt. # 2.

II.

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. "It is 'more than a scintilla, but less than a preponderance.'" Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Martinez v. Barnhart,

444 F.3d 1201, 1204 (10th Cir. 2006) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).

A party's right to de novo review is subject to the Tenth Circuit's "firm-waiver rule," which provides that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1059-60 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Id. at 1060. The Tenth Circuit has applied the firm-waiver rule when the plaintiff's objection to the report and recommendation merely asserted a series of errors without explaining why the magistrate's reasoning was erroneous. See Zumwalt v. Astrue, 220 F. App'x 770, 777-78 (10th Cir. 2007).[2]

### III.

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits. See 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)). "Step one requires the claimant to demonstrate 'that he is not presently engaged in substantial gainful activity.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.2005)). "At step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan, 399 F.3d at 1261). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988)). "If a

---

[2] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given the claimant's age, education, and work experience. Id. (citing Hackett, 395 F.3d at 1171).

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine whether the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**IV.**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2014. Dkt. # 10, at 14. At step two, the ALJ found that plaintiff had the following severe impairments: early anterior osteophytes at L2 through L5; and major depressive disorder, moderate severe, with anxious distress and panic attacks. Id. The ALJ found that plaintiff's impairments of hypertension and high cholesterol were not severe. Id. at 15.

At step three, the ALJ found that plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. Id. at 15-16. In assessing plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that plaintiff had moderate limitations in the two areas of (1) interacting with others and (2) concentrating, persisting, or maintaining pace. Id. at 16. The ALJ further found that plaintiff had mild limitations in the two areas of (1) understanding, remembering, or applying information and (2) adapting or managing oneself. Id.

After evaluating the objective and opinion evidence, and plaintiff's statements, the ALJ concluded that plaintiff has the RFC to perform a range of light work as follows:

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally balance, kneel, stoop, crouch, and crawl. The claimant can understand, remember, and carry out simple repetitive tasks. Public contact should not be a part of the job duties. The claimant can tolerate superficial contact with coworkers and supervisors.

Id. at 16-17. At step four, the ALJ found that plaintiff could not perform any past relevant work. Id. at 20-21. Based on the testimony of a vocational expert (VE), however, the ALJ found at step five that plaintiff could perform other unskilled work, such as small product assembler, inspector/packer, or poultry processor. Id. at 21-22. The ALJ determined that the VE's testimony reflected the information in the Dictionary of Occupational Titles (DOT). Id. at 22. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. Id. Accordingly, the ALJ concluded that plaintiff was not disabled.

V.

Plaintiff raised two points of error in her opening brief before the magistrate judge: (1) the ALJ failed to discuss plaintiff's obesity and fatigue at step two of the sequential process, which

5

led to subsequent failures at the remaining steps; and (2) the ALJ's step-five findings are flawed. Dkt. # 15. Plaintiff's objection to the R&R reiterates these arguments. Dkt. # 18. The Court will address each in turn.

A.     **Step-Two Analysis**

  1.  **Fatigue**

In her opening brief, plaintiff stated that the ALJ "failed to discuss plaintiff's long-running complaints of fatigue or to consider how that fatigue affected her RFC," even though, as plaintiff argued, the record was replete with evidence documenting plaintiff's complaints of fatigue to her medical providers. Dkt. # 15, at 6 (citing Dkt. # 10, at 348, 353, 355, 369, 374, 390, 398, 402, 406, 422, 478, 484, 498). The magistrate judge found no error because "fatigue is a symptom and is not itself a medically determinable impairment for step-two purposes." Dkt. # 22, at 5 (citing SSR 96-4p, 1996 WL 374187 and SSR 16-3p, 2017 WL 5180304). The magistrate judge also reasoned that the ALJ found plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms conflicted with the medical evidence in the record. Id. at 6 (citing Dkt. # 10, at 19). The magistrate judge noted that plaintiff did not challenge the ALJ's decision in this regard in her opening brief—plaintiff addressed it for the first time in her reply brief—and had therefore waived the argument.

In her objection, plaintiff argues that the magistrate judge ignored the fact that plaintiff's medical providers had diagnosed her as suffering from fatigue. Dkt. # 23, at 4 (citing Dkt. # 10, at 486, 496, 502, 503). Plaintiff further argues that her fatigue is a medically determinable impairment and thus "should have been considered severe or non-severe, included in any hypothetical and the decisional residual functional capacity . . . assessment, and should have been discussed by the ALJ, at the very least." Id. In addressing the magistrate judge's conclusion that

6

plaintiff had waived any argument challenging the consistency of plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms, plaintiff argues that defendant "opened the door" for plaintiff because defendant discussed the consistency finding in the defendant's response brief.

As mentioned above, "[a]t step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Lax, 489 F.3d at 1084 (quoting Grogan, 399 F.3d at 1261). An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921. The Social Security Administration (SSA) "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." Id. Rather, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." Id. Further, "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p, 1996, WL 374187.

This, of course, is not to say that a claimant's symptoms are irrelevant. Rather, in determining disability, the SSA will "consider all [a claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). The SSA uses a two-step process for evaluating an individual's symptoms. At step one, it "determine[s] whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. If the

claimant shows that a physical or mental impairment could reasonably be expected to produce the claimant's alleged symptoms, the SSA, at step two, "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Id. at *4.

Here, the ALJ completed neither step as it relates to plaintiff's fatigue. To be sure, the ALJ did note that he performed the two-step symptom evaluation process:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Dkt. # 10, at 19. But the ALJ's analysis focused solely on plaintiff's symptom of pain. Id. at 17 ("The claimant believed she was unable to work because of back pain."). Nowhere in his step-four analysis did the ALJ discuss plaintiff's fatigue. In fact, as far as the Court can tell, the word fatigue does not appear anywhere in the ALJ's decision.

Normally, this would require the Court to remand for further consideration of plaintiff's symptoms. See, e.g., A.B. v. Saul, Case No. 20-1114, 2020 WL 7714408 (D. Kan. Dec. 22, 2020) (remanding to ALJ where plaintiff complained of fatigue but ALJ failed to properly assess her symptoms); Thompson v. Berryhill, 2019 WL 632189 *3 (N.D. Ind. Feb. 14, 2019) (ordering remand in an action where the ALJ failed to properly assess fatigue symptoms under SSR 16-3p).[3]

---

[3] Moreover, the ALJ's conclusory statement that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p," Dkt. # 10, at 17, would normally not save the ALJ's otherwise deficient analysis. See SSR 16-3p, 2017 WL 5180304, *10 ("In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'").

But here, plaintiff never complained of fatigue or suggested that it was a symptom she was experiencing.

For instance, at her hearing before the ALJ, when the ALJ asked plaintiff's attorney's about his thoughts on the case, plaintiff's attorney responded, "[w]ell, I think it's a combination of physical problems to include . . . my client's back, hypertension, and some mental health issues that combine to make this a step five case." Dkt. # 10, at 42. Further, when the ALJ asked plaintiff what was keeping her from working, the two had the following exchange:

> Q. Okay. And what's been keeping you from working since the restaurant closed?
> A. My back. My back.
> Q. What about your back?
> A. My lower back, and my left leg goes numb. I can only stand for, I don't know, ten or 15 minutes. Walking is about the same.
> Q. How long has it been that bad?
> A. Probably since about 2014.
> Q. Have you ever had surgery on your back at all?
> A. I have not.
> Q. Do you have other problems besides your back?
> A. Blood pressure. OSU Family has treated me for blood pressure for several years.

Id. at 47-48. The ALJ continued asking plaintiff various questions about her daily routine and her ability to walk and stand on her feet, and plaintiff responded to every inquiry with comments about pain in her back and leg—never mentioning fatigue. Id. at 52.

After the ALJ questioned plaintiff, her lawyer continued focusing solely on plaintiff's back and leg pain. Id. at 54 ("Q. What was happening when you were at [your last job]? A. I just couldn't find a standing position. I couldn't – because walking was – it hurt. My leg would – my leg gives out on me."). Even when plaintiff testified about her need to lay down for most of the day, she tied it to her pain—not any fatigue. Id. at 55 ("Q. [W]hat percentage of that day would you spend laying down? A. About two-thirds of my day I have to lay down. Q. Does that eliminate the pain that

9

you've described? A. It doesn't totally eliminate it, no. I have to shift all the time. Q. So laying down can even become uncomfortable? A. Yes, it can."). The closest plaintiff came to mentioning fatigue in her hearing was when she was asked about how her anxiety affects her sleep:

> A. Anxiety is a big factor with me.
> Q. When is anxiety going to, say, rear its ugly head?
> A. It usually rears its ugly head when I -- and I've had to deal with trying to function through my day, trying to sleep because I can't sleep. I get tired and irritable, and I just get tired of it all, and when the anxiety comes panic attacks really.
> . . . .
> You implied some sleeping problems. About how many
> hours -- do you typically try to sleep at night?
> A. Yes.
> Q. About how many hours do you think you might sleep in a typical night, or a regular night?
> A. Three, maybe four.
> Q. And what time -- when the judge was asking about a
> typical day, what time do you start your day?
> A. I start my day around nine o'clock.
> Q. Do you feel refreshed and ready to go at nine o'clock?
> A. No, I don't.
> Q. Is there any napping that happens during the day?
> A. No, I try to stay awake during the day so maybe I can sleep at night, but, that doesn't always happen.

Id. at 56-57, 59-60. But even when plaintiff mentions her inability to sleep, she does not tie it to any fatigue in her daily life that would affect her functional capacity so as to put the ALJ on notice that it was something he needed to address.

Further, contrary to plaintiff's assertion in her opening brief and her objection, the record does not contain consistent complaints of fatigue to her medical providers, nor did her treating physician diagnose her with fatigue. See Dkt. # 15, at 6; see also Dkt. # 23, at 4. Instead, the record shows that plaintiff would sometimes tell her treating physician she felt fatigued, Dkt. # 10, at 353, 355, 369, 390, 422, 484, 498, but sometimes she state the opposite, id., at 374, 398, 402, 406, 478. And as for plaintiff's claim that she was diagnosed with fatigue, this claim is simply not true.

Plaintiff cited three different lab tests ordered by plaintiff's doctors to determine what medically determinable impairment was causing plaintiff's reported symptom of fatigue. See id. at 486, 496, 502, 503. Those tests, as far as the record and plaintiff's briefs reflect, never produced a diagnosis. Thus, the entire record shows that plaintiff would complain about fatigue to her physician on an ad hoc basis during about half of her visits, and that her doctors ordered blood tests three separate times to determine, among other things, why she was fatigued. And from this, plaintiff argues that the ALJ committed reversible error by failing to discuss her fatigue symptoms even though plaintiff never brought it up at her hearing. The Court finds the ALJ did not commit reversible error by failing to discuss plaintiff's symptom of fatigue in his decision.

The word "symptoms" is defined as "[a claimant's] own description of [her] physical or mental impairment." 20 C.F.R. §§ 404.1502(i), 416.902(n) (emphasis added). Thus, as the definition suggests, to qualify as a symptom, claimants must actually describe their perceived impairments. The regulations and rulings describing how symptoms should be evaluated reveal that this description of one's perceived impairments should occur at the hearing before the ALJ. See SSR 16-3p, 2017 WL 5180304, at *10 ("Our adjudicators must base their findings solely on the evidence in the case record, including any testimony from the individual or other witnesses at a hearing before an administrative law judge or hearing officer."); id. at 11 ("Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments."); 20 C.F.R. §§ 404.1529(a), 416.929(a) ("We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work."). Thus, when a claimant fails to discuss a symptom before an ALJ, courts will generally disregard a claimant's argument that the ALJ failed

11

to consider evidence of such symptom. See, e.g., Dossey v. Saul, No. CV419-035, 2020 WL 5736659, at *4 n.5 (S.D. Ga. July 21, 2020), report and recommendation adopted, No. CV419-035, 2020 WL 5735140 (S.D. Ga. Sept. 24, 2020) ("To the extent plaintiff argues that the ALJ did not properly consider evidence of her pain, she failed to provide any argument pursuant to 20 C.F.R. § 404.1529. . . . Plaintiff did not testify as to her pain in front of the ALJ, and plaintiff cited to evidence of neuropathy in her brief in the form of a diagnosis, but as discussed above, did not provide any evidence that the pain was disabling.").

It is obvious from the hearing transcript that plaintiff did not take seriously her symptom of fatigue and thus determined it was not worth presenting before the ALJ. Accordingly, this Court will not oblige plaintiff's attempt to have her case remanded when it was solely her own fault that the ALJ did not discuss her symptom of fatigue. See Wilson v. Astrue, 602 F.3d 1136, 1149 (10th Cir. 2010) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997))).

 2. **Obesity**

In her opening brief, plaintiff argued that the ALJ committed error because he failed to ask plaintiff about any limitations caused by her weight "even though it [was] his duty to investigate the facts and develop the arguments both for and against granting benefits." Dkt. # 15, at 6. The magistrate judge found plaintiff's argument unpersuasive, reasoning that neither the record nor plaintiff's testimony reflected any additional functional limitations due to her obesity. Dkt. # 22, at 7. In her objection, plaintiff resubmitted her argument and noted that the "ALJ's duty to develop

12

the record includes a duty to question witnesses before him and Plaintiff argues obesity was clearly an issue in the record." Id. at 7.

The Court finds the ALJ did not commit reversible error. An "ALJ is required to consider the effects of obesity when assessing the claimant's RFC." Rose v. Colvin, 634 F. App'x 632, 637 (10th Cir. 2015) (citing SSR 02-1p, 2002 WL 34686281, at *1[4]). "The ALJ may not, however, 'make assumptions about the severity or functional effects of obesity combined with other impairments.'" Id. (quoting SSR 02-1p, 2002 WL 34686281, at *6). "Rather, the ALJ must 'evaluate each case based on the information in the case record.'" Id. (quoting SSR 02-1p, 2002 WL 34686281, at *6). Here, the ALJ discussed the opinion evidence of Dr. Ressler, a non-examining state agency medical consultant who reviewed plaintiff's record evidence on May 25, 2016. The ALJ noted that Dr. Ressler stated that plaintiff "had the ability to lift/carry, push/pull twenty-pounds occasionally, ten-pounds frequently, stand/walk and sit six-hours in an eight hour workday with normal breaks." Dkt. # 10, at 19. The ALJ gave moderate weight to Dr. Ressler's opinion "limiting [plaintiff] to light work considering [her] obesity and back pain." Id. Thus, while the ALJ did not mention plaintiff's obesity in his RFC, he did include specific restrictions in the RFC to account for plaintiff's obesity limitations based on the opinion of a medical professional, which the Tenth Circuit has held to be appropriate. See Rose, 634 F. App'x at 637 (finding no error in obesity evaluation where ALJ found obesity severe and included specific postural limitations consistent with the record but did not specifically mention obesity in the RFC determination).

Further, even though plaintiff contends that the ALJ should have discussed her obesity more thoroughly, she does not provide the Court with any evidence of additional functional

---

[4] SSR 02-01p was rescinded effective May 20, 2019. However, it should be applied by reviewing courts if it was in effect when the ALJ made its decision, as is the case here. See SSR 19-2p, 2019 WL 2374244, at *5 n.14.

13

limitations due to her obesity. In fact, the record reveals she had a normal gait (Dkt. # 10, at 457, 531) and normal strength (id. at 419, 445). Thus, "the factual record does not support [plaintiff's] position that her obesity, either alone or in combination with other conditions, precludes her from performing [the range of work described in her RFC]." Rose, 634 F. App'x at 637 (quoting Howard v. Barnhart, 379 F.3d 945, 948 (10th Cir. 2004)).

Finally, plaintiff argues that the ALJ had to "inquire as to how her obesity limits her ability to function," Dkt. # 23, at 6, even though she never suggested to the ALJ that her obesity caused her any functional limitations. See Dkt. # 10, at 42-66. Plaintiff cites Baker v. Bowen, 886 F.2d 289, 292 (10th Cir. 1989), for the proposition that an ALJ has a duty to develop the record and ensure that all necessary and relevant information is produced, and she reasons that such duty "includes a duty to question the witnesses before him." Dkt. # 23, at 5-6. But Baker does not address an ALJ's duty to question a claimant. Rather, Baker deals with an ALJ's duty to "obtain new x-rays . . . laboratory results, and other records of [a claimant's] treating physician."

In Baker, the Commissioner "ordered a consultative physical examination without requesting that recent x-rays of Mrs. Baker's spine be taken." 886 F.2d at 291. The court held that this failure to develop the record was "especially egregious in light of the fact that Mrs. Baker was not represented by counsel." Id. Thus, Baker does not help plaintiff's argument, as it deals exclusively with the Commissioner's duty to ensure a claimant's medical records are produced, not any duty on the part of an ALJ to question a claimant about something she herself does not allege affects her functional capacity. In fact, as noted above, "when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." Wilson, 602 F.3d at 1149 (quoting Hawkins, 113 F.3d at 1167). Plaintiff

14

basically wants this Court to announce a rule that claimants can withhold their second-tier arguments at their hearing, so the ALJ will neglect to discuss an issue the claimant never raised, with the hope of getting a second bite at the apple. As with plaintiff's fatigue argument, the Court will not oblige.

## B. Step-Five Analysis

### 1. The ALJ's Step-Four Findings were Consistent with His Step-Five Findings

At plaintiff's hearing, the ALJ asked the VE about plaintiff's past relevant work, and the VE testified that plaintiff "did several things at the restaurant" where she previously worked, so she would just "list all of the jobs" that plaintiff did there. Dkt. # 10, at 61. The ALJ asked if plaintiff's previous work was a composite job,[5] to which the VE replied, "it sounds like that." Id. The VE then listed four jobs that were the equivalent of plaintiff's job at the restaurant: restaurant cook (medium exertion), cashier (light exertion), waitress (light exertion), and steam table attendant (light exertion). Id. at 62. After this exchange, the ALJ provided the VE with a hypothetical RFC that matched plaintiff's RFC, and the VE stated that "past work would be eliminated." Id. The ALJ next asked the VE what work plaintiff could perform, and the VE listed three light-exertion jobs that plaintiff could perform: small product assembler, inspector/packer, and poultry processor. Id. at 63.

However, when the ALJ wrote his decision, at step four, he did not state that plaintiff's past relevant work was a composite job. Instead, the ALJ listed the four components of plaintiff's past work separately and then stated that the "vocational expert testified given the above residual

---

[5] A composite job "is a job that has 'significant elements of two or more occupations and, as such, has no counterpart' in the Dictionary of Occupational Titles." Wilson v. Berryhill, 269 F. Supp. 3d 1164, 1169 (N.D. Okla. 2017) (quoting SSR 82-61, 1982 WL 31387, at *2).

functional capacity assessment the claimant would be unable to perform **any** of her past work because the work is too heavy." Id. at 20 (emphasis added). Plaintiff argues that this constitutes an impermissible inconsistency in the ALJ's step-four finding that plaintiff could not perform any of her previous work—some of which was light exertion—due to exertional limitations and his step five-finding that plaintiff could perform light-exertion jobs. The magistrate judge did not find any inconsistency because "the VE's testimony makes clear that the ALJ found Plaintiff had a composite job with significant elements of the four identified jobs, rather than four separate jobs." Dkt. # 22, at 9. In her objection, plaintiff argues that the magistrate judge offered a post hoc justification for the ALJ, which is impermissible. Dkt. # 23, at 6 (citing Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)).

The Court agrees with the magistrate judge. For a claimant to perform her past relevant work at a composite job, she must be able to perform the requirements of all the component jobs. SSA Program Operations Manual System (POMS) DI 25005.020(B) ("When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job."). Here, the ALJ incorporated the VE's testimony into his decision and found that plaintiff could not perform her past relevant work. And even though the ALJ did not technically use the phrase "composite job" in his decision, the testimony of the VE makes it clear that this is what the ALJ meant, and the failure of the ALJ to artfully express that in his decision is a mere technical omission. This is not a post hoc rationalization; this is common sense, which the Court must exercise. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012) ("In conducting our review, we should, indeed must, exercise common sense."). "Where, as here, [the Court] can follow the adjudicator's

reasoning in conducting [the Court's review], and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." Id.

### 2. Plaintiff's RFC is Compatible with Jobs Requiring Level-Two Reasoning

In the RFC, the ALJ found that plaintiff should be limited to "simple repetitive tasks." Dkt. # 10, at 17. Plaintiff argues that this mental limitation is incompatible with two of the three jobs identified by the VE because the DOT assigns them a GED reasoning level of two: DOT 706.684-022 (small products assembler) and DOT 559.687-074 (inspector/packer). Dkt. # 23, at 7. A job with a reasoning level of two requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written and oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT App'x C, § III. Plaintiff cites three district court opinions for the proposition that there is a conflict between level two reasoning and a limitation to simple and routing tasks. Id. (Paddlety v. Colvin, No. CIV-14-891-D, 2015 WL 13741883, at *8 (W.D. Okla. Oct. 26, 2015), report and recommendation adopted sub nom. Paddelty v. Colvin, No. CIV-14-891-D, 2016 WL 3647697 (W.D. Okla. July 1, 2016); Tabor v. Colvin, No. CIV-14-281-RAW-SPS, 2015 WL 5724857, at *4 (E.D. Okla. Sept. 29, 2015); Ward v. Colvin, No. CV 14-1141-M, 2015 WL 9438272, at *4 (W.D. Okla. Sept. 17, 2015), report and recommendation adopted, No. CIV-14-1141-M, 2015 WL 9451073 (W.D. Okla. Dec. 23, 2015).

This Court, of course, is not bound by any of the cases plaintiff cites. And the Tenth Circuit has stated that an RFC limitation to simple and routine work tasks appears consistent with level-two reasoning. Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (stating that a plaintiff with an RFC limiting her to "simple and routine work tasks" was consistent with level-two reasoning); see also Stokes v. Astrue, 274 F. App'x 675, 684 (10th Cir. 2008) (rejecting argument that an RFC limitation to "simple, repetitive and routine work should be construed as a limitation

to jobs with reasoning-level rating of one). Plaintiff does not try to distinguish <u>Hackett</u> or <u>Stokes</u>, and the Court cannot see any reason why it should either. Accordingly, the Court finds no error in the ALJ's determination that plaintiff could perform the jobs of small product assembler, inspector/packer, and poultry processor.

Moreover, even if the Court were wrong on this point and the jobs of small products assembler and inspector/packer were inconsistent with GED reasoning level two, any error would be harmless. The VE identified a third job with a GED reasoning level of one—DOT 525.687-070 (poultry dresser)—and the VE testified that there were 200,000 poultry dresser jobs nationwide. Dkt. # 10, at 63. The Tenth Circuit has held that if at least 152,000 jobs in the national economy remain after evaluating the ALJ's errors, any such error would be harmless. <u>Stokes v. Astrue</u>, 274 F. App'x 675, 684 (10th Cir. 2008) ("Here, we do not believe any reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 22) is **accepted**, and the Commissioner's decision denying benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 13th day of September, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

18